UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

**FILED**
**SCRANTON**
SEP 29 2014

PER _____
DEPUTY CLERK

NATHANIEL L. ADDERLY                    :
                                        :
        Plaintiff                       :
                                        :
    v.                                  :  CIVIL NO. 3:CV-13-1465
                                        :
SUPT. LAUREL HARRY, et al. ,            :  (Judge Kosik)
                                        :
        Defendants                      :

## MEMORANDUM

### I.    Introduction

Plaintiff, Nathaniel L. Adderly, an inmate currently confined at the State

Correctional Institution at Houtzdale, Pennsylvania, filed this civil rights action

pursuant to 42 U.S.C. § 1983.  In the complaint, he challenges conditions of

confinement at the State Correctional Institution at Camp Hill, Pennsylvania, his

former place of incarceration.  Named as Defendants are numerous SCI-Camp Hill

employees.  Presently pending is Defendants' motion to dismiss the complaint.  (Doc.

13.)

### II.   Standard of Review

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of complaints that fail to

state a claim upon which relief can be granted.  A court considering a motion to

dismiss under Rule 12(b)(6) must "accept all factual allegations as true, construe the

complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014)(internal quotations omitted). "Dismissal is appropriate where the plaintiff has not alleged" sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint satisfies the plausibility standard when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, "exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)(citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Additionally, pro se pleadings are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244-45 (3d Cir. 2013). Pro se litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an

2

amendment would be inequitable or futile.  See Connelly, 706 F.3d at 217 (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008)).  However, dismissal without leave to amend is justified on the grounds of bad faith, undue delay, prejudice or futility.  Alston v. Parker, 363 F.3d 229, 235-36 (3d Cir. 2004).  Thus, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002).  With this standard in mind, the court will now set forth the allegations contained in Plaintiff's complaint.

## III.  Background

Named as Defendants in the complaint are the following employees at SCI-Camp Hill: Defendants Briggs, Cook, Davy, Harry, Kerstetter, Klopotoski, Lewis, Meintel, McNeal[1], Mitchell, Reisinger, Schultz, Gramble and the Program Review Committee.[2]  On November 16 and 17, 2012, Defendant Gramble did not allow Plaintiff to go out to yard.  Plaintiff thinks it may have been in retaliation for other

---

[1] Although Plaintiff spells Defendant McNeal's last name "McNeil" in the complaint, it appears the proper spelling is "McNeal" according to the Waiver of Summons and Entry of Appearance on behalf of said Defendant.

[2] Officer Gramble has not been served with the complaint.  The Department of Corrections did not accept service on Defendant Gramble's behalf in that the DOC was unable to identify him.  As such, Plaintiff will be afforded fifteen (15) days within which to provide the court with information as to the accurate name and address where this Defendant can be served with the complaint.  In addition, in the caption of the complaint, Plaintiff appears to list Defendant Meintel twice, spelling his name the second time as "McIntel." The court will treat this Defendant as the same person.

3

lawsuits he filed against correctional officers in 2011 and 2012.  When yard was called on November 18, 2012, Plaintiff's cell door remained locked.  Defendants Davy and Mitchell placed cuffs on Plaintiff and escorted him to a strip cell.  Defendants Mitchell and McNeal conducted a strip search and Plaintiff claims McNeal roughly propelled him into the cell.  Mitchell failed to provide Plaintiff with lunch.  Plaintiff claims that he has a prescribed high caloric diet because he has been found to be underweight.

Defendants Briggs and Mitchell made derogatory verbal slurs to Plaintiff and ignored his complaints about a running toilet in the cell.  Briggs, McNeal and Kerstetter later relocated Plaintiff to the most restrictive cell (DA-27) that had only a concrete bed frame, plexi-glass door shield and a modified food aperture.  McNeal ordered Briggs to cut off the water to the cell.  Plaintiff claims he was confined in this cell for 3 months.

According to Plaintiff, Defendant Schultz issued him a retaliatory misconduct (#B106961).  A copy of the misconduct is attached to the complaint and indicates that Plaintiff did not have his ID card on November 18, 2012, despite being told he needed it to go to yard.  (Doc. 1-1, at 8.)  He was charged with failing to comply with an order and threatening an employee.  He received a second retaliatory misconduct from Defendant Mitchell, #B476509.  In this misconduct, he was charged with threatening an employee or their family with bodily harm and destroying or damaging

property.  (Doc. 1-1 at 3.)

On November 19, 2012, Plaintiff was denied breakfast and lunch by Defendant Briggs.  On the same date, hearings were conducted on the misconducts by Defendant Reisinger.  Plaintiff states he submitted his written versions of what occurred, as well as witness forms.

Plaintiff raises procedural due process challenges with respect to the misconduct hearings that were conducted.  With respect to each hearing on the above misconducts, Plaintiff complains that Hearing Examiner Reisinger began writing out his sanction before hearing Plaintiff's version of the incident or ever looking at the witness forms.  He claims he was denied all witnesses and received findings of guilty in each instance. With respect to #B106961, he received consecutive sentences of 60 and 30 days.  With respect to #B476509, he received 90 days of consecutive disciplinary confinement.  Plaintiff claims he collapsed after the hearings because he was malnourished.  Although Defendants McNeal, Reisinger and Briggs did not check him, medical personnel were summoned and checked Plaintiff's vitals. Plaintiff complained about the malnourishment to them.  Plaintiff claims he was subjected to a "rough escort" back to his cell by Briggs where he twisted his arms and forcefully pushed him.

Sometime between November 21 and November 24, 2012, Plaintiff claims Defendant Cook influenced Defendant Briggs to dump his food out of the tray onto

5

the unsanitary door aperture. When Plaintiff complained, Cook issued him a misconduct (#B476514) for threatening an employee or their family with bodily harm and destroying or damaging property. (Doc. 1-1 at 19.) Defendant Reisinger was the Hearing Examiner, and again made a decision before ever listening to Plaintiff's version or witnesses. A sanction of 150 days DC was imposed consecutive to the earlier sanctions.

Appeals of all three misconducts were pursued and upheld by Defendants Harry, Lewis, Klopotoski and Meintel. Plaintiff challenges their conduct in upholding the findings of guilt.

On December 26, 2012, Plaintiff claims he had an appointment in the Medical Department. He claims that Defendant Cook was going to make him walk there only wearing boxer shorts. This was not the clothing protocol the previous day when Plaintiff was escorted to the Medical Department. Plaintiff claims he complied, but that Cook pushed him "brusquely back into the cell" and slammed the door, thereby denying him medical treatment. (Id. at 3.) Plaintiff filed a grievance (#441287) with regard to this matter, and was unsuccessful. He has received no response to an appeal filed with Defendant Harry.

## IV.    Discussion

### A.    Claims against Defendants in their Official Capacities

Defendants move to dismiss all claims brought against them in their official

capacities for money damages as barred by the Eleventh Amendment. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States ....", U.S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune frm lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). This proscription directly applies here. Pennsylvania expressly withheld consent to suit when it enacted its exceptions to sovereign immunity. See 42 Pa. C.S. § 8521. Therefore suits against the Commonwealth of Pennsylvania and Pennsylvania officials acting in their official capacity are barred by the Eleventh Amendment. For these reasons, all claims set forth against Defendants in their official capacities for money damages will be dismissed.

**B.   Lack of Personal Involvement**

Defendants move to dismiss the claims set forth against Defendants Harry,

Meintel, Klopotoski and Lewis on the basis of lack of personal involvement.   In order to prevail in a § 1983 action, Plaintiff must establish two elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Section 1983 liability cannot be predicated solely on respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976); Rode v. Dellarciprete, 845 F.2d 1195,1207 (3d Cir. 1988).   Individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).   Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Rode, 845 F.2d at 1208, quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991). Moreover, if an official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.3d at 1208; Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006).   Further, simply alleging that an official failed to respond to a letter or request Plaintiff may have sent raising complaints is not enough to demonstrate that they had the requisite personal

8

involvement.  See Rivera v. Fischer, 655 F. Supp. 2d 235 (W.D.N.Y. 2009)(Finding that many courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim.).

The only claims set forth against Defendants Harry, Meintel, Klopotoski and Lewis are that they upheld findings of guilt by the Hearing Examiner with respect to misconducts Plaintiff was issued.  There are no allegations that these Defendants were involved in the underlying incidents that took place.  Defendants only issue is with respect to Defendants' failure to overturn findings of guilt on the misconducts.  For these reasons, Defendants Harry, Meintel, Klopotoski and Lewis are dismissed from this action on the basis of lack of personal involvement.  See Rauso v. Vaughn, 2000 WL 873285 (E.D. Pa. 2000); Bey v. Pennsylvania Dept. of Corrections, 98 F. Supp. 2d 650 (E.D. Pa. 2000).

Defendants also move to dismiss Defendant Davy on the basis of lack of personal involvement.  The court agrees that Davy should be dismissed from this action.  The only mention of Davy in the complaint is that he came to Plaintiff's cell on November 18, 2012, told Plaintiff to cuff up, and then escorted him to the Restricted Housing Unit.  There are no allegations by Plaintiff that Davy violated his constitutional rights on this occasion.  As such, he will be dismissed from this action.

**C.      Failure to State any Cognizable Constitutional Claim**

1.      Conditions of Confinement

Defendants seek to dismiss the conditions of confinement claims Plaintiff raises pursuant to the Eighth Amendment.  Under the Eighth Amendment, prisoners are constitutionally protected from cruel and unusual punishment.  Farmer v. Brennan, 511 U.S. 825 (1991); Allah v. Ricci, 532 F. App'x 48 (3d Cir. July 24, 2013).  However, not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights.  Rhodes v. Chapman, 452 U.S. 337 (1981); Booth v. King, 228 F. App'x 167, 171 (3d Cir. 2007).  Cruel and unusual punishment will only be found "where, viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities."  Id. (quoting Tillery v. Owens, 907 F.2d 418, 426-27 (3d Cir. 1990)).

In the non-medical context, the Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measure to guarantee the safety of the inmates."  Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).  To assert a viable claim, a prisoner must satisfy both an objective and subjective test.  See Wilson v. Seiter, 501 U.S. 294, 298 (1991).  Specifically, a prisoner must show that the alleged deprivation is "sufficiently serious" and that he has been deprived of the "minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834.  A prisoner must also demonstrate that "he is

incarcerated under conditions posing a substantial risk of serious harm" and that prison officials possessed a "sufficiently culpable state of mind" and demonstrated "deliberate indifference" to his health or safety. Id. However, only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992).

The denial of yard exercise for three (3) days, a leaking toilet for part of one (1) day, and the denial of three meals (lunch on November 18, 2012 and breakfast/lunch on November 19, 2012) do not rise to the level of conduct establishing extreme deprivations for purposes of an Eighth Amendment violation. This is so even if Plaintiff has been evaluated and found to be "undernourished." He does not set forth any allegation that he suffered any ill effect by missing three meals. Only a substantial deprivation of food to an inmate sets forth a viable Eighth Amendment claim. See Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009); Ball v. Craver, Civ. No. 11-1831, 2012 WL 2122186 (May 22, 2012).

Also, his placement in a restrictive cell that had a concrete bed frame, plexiglass door shield and modified food aperture, while not comfortable or desirable, are not "sufficiently serious" deprivations of the "minimal civilized measure of life's necessities to invoke Eighth Amendment violations. This is also true with respect to the one occasion where Defendant Cook dumped Plaintiff's food tray onto the door aperture.

However, Plaintiff's claim that Defendant McNeal and Briggs cut off his water supply will go forward at this juncture. Without passing judgment as to the ultimate success of this claim, in reading the complaint liberally and making all inferences in favor of Plaintiff, he appears to allege that he was confined in a cell for three (3) months with no water, presumably with the inability to flush the toilet.

2.     Verbal Harassment

Defendants move to dismiss Plaintiff's claims of verbal harassment set forth against Defendants Briggs and Mitchell. Assuming these allegations are true, it is well established that the use of words, no matter how violent, vulgar or unprofessional, is not actionable under 42 U.S.C. § 1983. Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012)("[V]erbal threats or taunts, without more, are not sufficient to constitute a violation of the Eighth Amendment," also noting that racial harassment by mimicking Ku Klux Klan hoods failed to state a claim); Robinson v. Taylor, 204 F. App'x 155, 156 (3d Cir. 2006)(non precedential)(inmate claiming correctional officers made racial and sexual comments toward him failed to state an Eighth Amendment claim). Consequently, because the alleged verbal harassment was not accompanied by any injurious actions, or physical actions of any kind, by the named defendants, Plaintiff fails to state a cognizable claim against them. The verbal harassment claim will be dismissed without leave to amend, as any amendment would be futile.

12

3.    Issuance of False Misconducts/Denial of Due Process

To the extent Plaintiff contends he was issued false misconduct reports, the filing of a false misconduct report does not violate an inmate's due process rights. The general rule, as stated in <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986), provides that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."

An inmate has the right not to be deprived of a protected liberty interest without due process of law.  Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of a misconduct.

To assert a right to procedural due process, Plaintiff must have a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000).  "A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections, including the opportunity to call witnesses and present documentary evidence." <u>Dunbar v. Barone</u>, 487 F. App'x 721, 724 (3d Cir. 2012)(addressing an inmate's claim that his procedural due process rights were violated when he was not permitted to call witnesses at his misconduct

hearing)(citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 566-67 (1974)).[3] "But, this due process right is not triggered unless the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" <u>Dunbar</u>, 487 F. App'x at 724-25 (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)).

"[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002)(quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 486 (1995). To determine if an inmate's placement was atypical, the Court considers: 1) the amount of time the prisoner was placed into disciplinary segregation and 2) whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those

---

[3] In <u>Wolff</u>, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff</u>, 418 U.S. 539. Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. <u>Id</u>. at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. <u>Id</u>.

An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill</u>, 472 U.S. 445, 453-56 (1985). In that case, the court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

14

imposed upon other inmates in solitary confinement. <u>Shoats</u>, 213 F.3d at 144.

Even if due process requirements were not complied with at the misconduct hearings, Plaintiff's complaint, in light of <u>Sandin</u>, is without merit because Plaintiff did not have a liberty interest in remaining free from disciplinary confinement and the procedural due process protections set forth in <u>Wolff</u> do not apply.

With respect to the first misconduct hearing (#B106961), Plaintiff received consecutive sentences of 60 and 30 days disciplinary confinement.  With respect to the second misconduct (#B476509), he received 90 days of consecutive disciplinary confinement.  With respect to the third misconduct (#B476514), he received a sanction of 150 day DC which was imposed consecutive to the earlier sanctions.  All tallied, his total DC time amounted to 330 days, or approximately 11 months.  The facts alleged in the complaint fail to establish that the length of Plaintiff's confinement, or the conditions of his confinement in the RHU, amounted to an "atypical and significant hardship" under <u>Sandin</u> so as to deprive him of a protected liberty interest.  <u>See</u> <u>Griffin v. Vaughn</u>, 12 F.3d 703, 706 (3d Cir. 1997)(finding that fifteen months in segregation was not an atypical and significant hardship).  Clearly, Plaintiff's disciplinary confinement as a result of the misconduct sanctions did not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.  As such, his liberty interests were not implicated and his right to due process at the misconduct hearings was not triggered in the first instance.  Defendants

15

are therefore entitled to the dismissal of these claims.

> 4.   Excessive Force claims

Plaintiff sets forth three (3) instances of alleged excessive force.  The first occurred on November 18, 2012 when Defendant McNeil propelled Plaintiff into his cell.  The second was on November 19, 2012, when Defendant Briggs used rough force to escort Plaintiff to his cell twisting his arms and forcefully pushing him.  The third instance occurred on December 26, 2012, when Defendant Cook pushed Plaintiff into his cell and slammed the door behind him.

When prison officials are accused of using excessive force, the inquiry "is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 7 (1992).  Since this analysis entails issues of motivation, such claims often turn on factual disputes which cannot be resolved as a matter of law.  Consistent with this fact-bound approach to the litigation of these claims, there are several factual considerations that a court must examine in determining whether a correctional officer has used excessive force including: "(1)'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) ' any efforts made to temper the severity of a forceful

response.'" Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(quoting Whitley v.

Albers, 475 U.S. 312, 321 (1986)).

Not "every malevolent touch by a prison guard" violates the Constitution.

Hudson, 503 U.S. at 9. "The Eighth Amendment's prohibition of 'cruel and unusual'

punishments necessarily excludes from constitutional recognition de minimis uses of

physical force, provided that the use of force is not of a sort 'repugnant to the

conscience of mankind.'" Id. (quoting Whitley, 475 U.S. at 327). Thus, "[a]n inmate

who complains of a 'push or shove' that causes no discernible injury almost certainly

fails to state a valid excessive force claim." Wilkins v. Gaddy, 559 U.S. 34, 38

(2010).

The extent of injury suffered is a consideration that may be relevant to

determining if the force could have plausibly been thought necessary. Id. at 37. "The

extent of injury may also provide some indication of the amount of force applied." Id.

But to establish an excessive force claim, an inmate does not need to show that he

suffered a significant, or even a more than de minimis injury. Id. Rather, the central

issue is the force used by the officer, not the injury caused by the officer. Flood v.

Schaefer, 439 F. App'x 179,182 (3d Cir. 2011).

In applying the foregoing principles, the court finds that Plaintiff fails to state a

claim with respect to the first and third instances of excessive force alleged. He

merely asserts that he was "pushed" or "propelled" into his cell, without more, and

asserts no injury. This behavior on the part of Defendants, while not condoned by the court, is not the type of force repugnant to the conscience of mankind. However, out of an abundance of caution, the court will deny Defendants' motion with respect to the excessive force claim alleged against Defendant Briggs in that Plaintiff claims more than a push or a shove, but rather the deliberate twisting of his arms.

5.    Retaliation claims

Plaintiff alleges that he was denied exercise yard in retaliation for filing lawsuits against correctional officers. He also claims he was issued retaliatory misconduct reports. To prevail on a retaliation claim, a prisoner must show that: (1) he engaged in constitutionally protected conduct; (2) he suffered some "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) his protected conduct was a substantial or motivating factor in the decision to discipline him. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. V. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). Once a prisoner establishes a prima facie case, a defendant may overcome the retaliation claim by showing "by a preponderance of the evidence that it would have made the same decision absent the protected conduct for reasons

reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002)(citation omitted).

Plaintiff's first retaliation claim will be dismissed as conclusory. Plaintiff claims he was kept in from exercise yard on November 16 and 17, 2012. He then generally states that maybe this conduct could have been in retaliation for lawsuits he filed in 2011 and 2012. This allegation is nothing more than an unsupported speculative attack upon Defendants' motivations. Plaintiff offers no support for any such general claim to even possibly carry his burden of proving motive. Merely because he was not allowed out to yard, he assumes it must have been due to lawsuits he has filed in the past. He sets forth no facts even suggesting that past lawsuits were a substantial or motivating factor in Defendants decision to keep him in from yard on those occasions. This claim cannot survive Defendants' motion to dismiss.

A false misconduct report is not in itself a civil rights violation, but if it was issued in retaliation for an inmate's exercise of a constitutional right, such as filing lawsuits and grievances, it is actionable. See Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). In moving to dismiss his claims with respect to the retaliatory issuance of misconducts, Defendants argue that even if Plaintiff were able to establish the first two Rauser prongs, the fact that he was found guilty of the misconducts precludes him from establishing the third prong of his retaliation claim. See Henderson v. Baird, 29 F.3d 464, 469 (8th Cir.

19

1994)(a finding of guilt at a prison disciplinary hearing based on some evidence "essentially checkmates [the] retaliation claim."); <u>Nifas v. Beard</u>, 374 F. App'x 241, 244 (3d Cir. 2010)(citing <u>Henderson</u>, 29 F.3d at 469); <u>Romansky v. Stickman</u>, 147 F. App'x 310, 312 (3d Cir. 2005)(non precedential)("in light of the fact that he was found guilty of misconduct, Romansky does not state a retaliation claim based upon his receipt of a misconduct")(citing <u>Henderson</u>).  However, the Third Circuit has held that the better course of action is to allow such claims to proceed and not apply the burden-shifting aspect of the retaliation standard at the motion to dismiss stage.  <u>See</u> <u>Bond v. Horne</u>, 553 F. App'x 219, 2014 WL 278526, at *3 (3d Cir. 2014).  For these reasons, the court will deny Defendants' motion to dismiss with respect to Plaintiff's claims of retaliatory issuance of misconducts.

      6.     Inadequate Medical Care

It appears that Plaintiff also attempts to set forth a medical deliberate indifference claim under the Eighth Amendment against Defendant Cook.  In order to state a denial of medical care claim, a plaintiff must demonstrate deliberate indifference to a serious medical need on the part of the prison official.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-106 (1976).  In the complaint, Plaintiff merely alleges that Cook pushed him back into his cell, slammed the cell door and denied Plaintiff his medical treatment appointment.  He does not specify what the appointment was for or identify any serious medical condition.  As such, the court agrees that as pled,

Plaintiff's allegation fails to set forth a viable Eighth Amendment medical claim. However, Plaintiff must be afforded the opportunity to amend this allegation. He will be allowed fourteen (14) days within which to submit an amendment to his complaint attempting to set forth a viable medical claim with respect to this incident. The amendment cannot go beyond the scope of providing details with respect to the type of medical treatment denied by Cook on the date he pushed Plaintiff back into his cell and did not permit him to attend his medical appointment.

For all of the above reasons, Defendants' motion to dismiss will be granted in part and denied in part. An appropriate order follows.